## Jonas White *versus* Nathaniel Cutler.

A widow is not entitled to dower in land covered with growing wood and timber, although it was used by the husband for the purpose of raising wood and timber as objects of profit, unless such land is assigned to her as part of her dower in connexion with buildings or cultivated land : and the widow, in such case, is only entitled to cut such wood and timber as may be necessary for the supply of the dower estate, to be actually used and consumed thereon, or for purposes connected with the proper occupation and enjoyment thereof.

After dower had been assigned to a widow, in a dwellinghouse and the land connected therewith, consisting in part of woodland, all of which were occupied by the husband as one farm, she removed from the land and resided in another family at board, where she was supplied with fuel. The house, having become untenantable, was taken down with the consent of all parties. It was *held*, that neither the widow nor the lessee of the dower estate, had a right to cut the wood thereon for fuel; and that the reversioner would have a right to take such wood, if it should be severed by them.

Trespass *quare clausum fregit*, and for taking away a quantity of wood, alleged to be the property of the plaintiff

The parties stated a case.

Elizabeth Cutler was formerly the wife of one White ; and upon his death, which took place more than forty years ago, dower was assigned to her in his estate. The dower estate consisted of cultivated lands, woodland, and about one half of a dwellinghouse and other buildings, which were all occupied by White as one farm. The widow afterwards married one Cutler, who died more than thirty years ago. Cutler devised to her certain property in lieu of dower, which she accepted. A part of the property so devised, was ten cords of wood per annum, which she continued to receive up to the time of the alleged trespass.

For more than thirty years prior to April, 1832, the widow had leased her dower in White's estate, by parol, to the defendant, who owned about four fifths of the reversion, nothing

being said respecting the woodland ; and ever since that time she had resided at the distance of several miles from White's farm, at board, in another family. The mansion-house in which her dower was assigned having become untenantable several years ago, was taken down by the consent of all parties. The widow had never taken any wood from the land assigned as her dower after she leased it to the defendant, and had derived no benefit from the woodland ; nor had the defendant cut any wood thereon.

On March 22. 1832, the widow, by indenture, demised the lands so assigned as her dower, to the plaintiff, to hold for the term of one year from April 1, 1832 ; and under this lease, the plaintiff entered and cut a few feet of wood, claiming a right to it as her wood for the year 1831. The plaintiff afterwards, but within the same year, cut several more cords of wood upon the same land. The several parcels of wood cut by the plaintiff, were taken by the defendant and converted to his own use.

If the Court should be of opinion, that the plaintiff was entitled to recover, the defendant was to be defaulted ; otherwise the plaintiff was to be nonsuited.

*Hoar*, for the plaintiff. Dower is assigned to the widow    *Oct. 14th.* for her benefit generally, and it is not necessary that she shall live on the dower land. So her right to firebote is a *personal* privilege, and does not depend upon the place of her residence. It will not be contended that the widow cannot assign or lease her dower estate in a dwellinghouse or in cultivated land ; and the same right extends to her interest in the woodland. The house was taken down by the consent of all parties, and the case stands as if there had been no house upon the land. Suppose then the husband leaves land without any dwellinghouse upon it, and a large part of such land is woodland, the widow, in such case, cannot live on the land. If she has a right to cut off the wood at all, it must be used elsewhere. In the case of wood cut for repairs, there is good reason why it should be actually used on the dower land ; for the reversioner is to have the benefit of it when the widow dies ; but he cannot be benefited by wood cut by her for fuel and consumed

Where woodland is used by the husband, in order to raise wood for sale, for purposes of profit, it would be unjust to deprive the widow of her dower therein. *White* v. *Willis*, 7 Pick. 143.

*Greenleaf*, for the defendant, to the point that a dower estate is governed by the same rule as an estate for life generally, cited Park on Dower, 5 ; that the cutting of the wood in the present case, for fuel, which was not to be used on the land, was waste, *Padelford* v. *Padelford*, 7 Pick. 152 ; *Loomis* v. *Wilbur*, 5 Mason, 15 ; *Elliot* v. *Smith*, 2 New Hampsh. R. 430 ; 1 Chitty's Gen. Pr. 259, 260 ; Shep. Epit. *Estovers*, 545 ; 2 Bl. Comm. 35 ; *Cowper* v. *Andrews*, Hob. 39 ; 1 Barton's Conveyancing, 215 ; and that the defendant, who was the reversioner, might enter and seize the wood, if unlawfully severed by the plaintiff, Park on Dower, 357 ; *Herlakenden's case*, 4 Co. R. 62 ; *Blaker* v. *Anscombe*, 4 Bos. and Pul. 25.

SHAW C. J. delivered the opinion of the Court. The question in the present case, is whether a tenant in dower or her lessee has a right to cut wood upon the dower estate, for sale, to be removed and not used or consumed upon, or in connexion with the estate.

We think that a reference to a few principles, which have been adopted and acted upon in decided cases, in our own State, will lead to a satisfactory decision of this question.

It was in effect decided in *Sargent* v. *Towne*, 10 Mass. R. 307, that a tenant for life has no right to cut growing trees, that such cutting would be waste, and that wild and uncultivated land cannot be deemed estate yielding annual rents or profits.

In the case of *Conner* v. *Shepherd*, 15 Mass. R. 164, it was decided, that in this Commonwealth a widow is not entitled to dower in wild and uncultivated lands, held separately and distinct from houses, cultivated lands and other improved estate, first, because they yield no annual profit, and secondly, because the widow could not make the only beneficial use of them, of which they are capable, without committing waste and forfeiting the estate. These reasons apply as well to the case of a woodlot situated in the midst of a cultivated coun-

try, as to forest lands in their original state. But the chief justice, in delivering the opinion of the Court in this case, takes care in terms to limit its operation to the case of woodlands not used or connected with a cultivated farm, or other improved estate.

In the case of *Webb v. Townsend,* 1 Pick. 21, the general rule, that a widow is not dowable of wild lands, is confirmed, and it was placed more distinctly upon the ground, that as a widow is to be endowed, not according to the value of the land, but according to the value of the annual rents and profits, and as uncultivated lands yield no rents and profits, dower therein would be nugatory and of no value.

But in a subsequent case, *White v. Willis,* 7 Pick. 143, it was held, that a lot of wild land, which had been used by the husband in connexion with his house and cultivated land, to supply wood for buildings, fences and fuel, might be properly assigned to a widow as part of her dower, to enable her to take fuel and timber for repairs. It was also suggested, that a widow would have no right to take firebote, &c. from lands of her deceased husband, unless the land, from which it is taken, were included in those assigned as her dower.

A distinction was urged in the argument, between woodlands, kept by the owners to raise wood for sale, for purposes of profit, and wild lands, and that it would be hard to deprive a widow of her dower in such lands, of which the raising of wood for sale may be considered as the most profitable use. But we think the answer results from the legal principles on which the foregoing cases are settled. Such estate yields no annual profit. The owner may make a profit of the land, but it is in the exercise of the rights of a tenant in fee, which a tenant for life, by law, does not enjoy, that of felling growing trees. The result we think is, that a widow is not to be endowed of a lot of growing wood and timber, although kept purposely to raise wood and timber as objects of profit, provided that it is not assigned to her as part of her dower, in connexion with buildings or cultivated lands. But when woodland is so connected and used, it may be included in the assignment of dower, to be used and enjoyed by the widow, or those holding under her.

White
v.
Cutler.

But the right of the widow thus acquired is that of reason-able estovers, under which may be included firebote or the ne cessary fuel for the supply of the dower estate. But this right of reasonable estovers is confined strictly to wood and timber sufficient for the supply of the estate, and it must be actually applied, used and consumed upon the estate, or for purposes connected with its proper use, occupation and en-joyment. It has been recently decided, that cutting growing trees, to be exchanged for other wood to be used as fuel or timber on the estate, was not within the right of a tenant in dower, but in law was deemed waste : *Padelford* v. *Padel-ford*, 7 Pick. 152.

*A fortiori*, the cutting of wood for sale, the proceeds of which are not to be used or appropriated upon the estate or in connexion with it, is not admissible, under the limited right of taking reasonable estovers.

If the plaintiff, as lessee of the tenant in dower, had no right to cut the growing wood, the defendant, as having the next estate of inheritance, had a right to take the wood when severed. *Blaker* v. *Anscombe*, 4 Bos. and Pul. 25.

*Plaintiff nonsuit.*